**George C. PRICE, Petitioner,**

v.

**The PEOPLE of the State of Colorado, Respondent.**

**No. 02PDJ003.**

Office of the Presiding Disciplinary Judge of the Supreme Court of Colorado.

Nov. 22, 2002.

Attorney Regulation. George F. Price, attorney registration number 10652, was reinstated to the practice of law effective December 22, 2002.

Opinion issued by Presiding Disciplinary Judge ROGER L. KEITHLEY and Hearing Board Members MARILYN L. ROBERTSON and ROBERT M. MAES, both members of the bar.

## OPINION AND ORDER READMITTING GEORGE C. PRICE TO THE PRACTICE OF LAW

### ATTORNEY REINSTATED TO THE PRACTICE OF LAW

On September 20, 2002, a reinstatement hearing was held pursuant to C.R.C.P. 251.29(b) before a Hearing Board consisting of the Presiding Disciplinary Judge ("PDJ") and two Hearing Board members, Marilyn L. Robertson and Robert M. Maes, both members of the Bar. Alexander R. Rothrock appeared on behalf of George S. Price. James S. Sudler, Assistant Attorney Regulation Counsel, represented the People of the State of Colorado (the "People"). Sarah Cline–Lebsack, Richard B. Wagner, Sandra G. Jaquith, and Howard V. Selinger, Ph.D testified on behalf of Price, who testified on his own behalf. Price's exhibits 1 through 9 were offered and admitted into evidence.

The Hearing Board considered the testimony and exhibits admitted, assessed the credibility of the witnesses, and made the following findings of fact which were established by clear and convincing evidence.

### I. FINDINGS OF FACT

George Case Price ("Price") took the oath of admission and was admitted to the bar on October 17, 1980, attorney registration number 10652. As a result of a Conditional Admission of Misconduct submitted by the parties, the Colorado Supreme Court suspended Price from the practice of law on December 16, 1996 for a period of one year and one day. The effective date of the period of suspension was January 15, 1997. *People v. Price,* 929 P.2d 1316 (Colo.1996).

The facts giving rise to the suspension arose in part from conduct involving five separate client matters. In the first matter,[1] Price represented a client in a dispute with a school district involving the client's termination of employment and the employer's failure to retain her following the termination. Price agreed to represent her on a contingent fee basis without executing a written fee agreement. When the matter settled, Price deposited the settlement check in his trust account. Price attempted to send the client her share two months thereafter, but she did not receive the check. After Price deposited the settlement check into his trust account, the account dropped below the amount owed to the client. Two months later, when the client filed a request for investigation, Price tendered payment in the form of a cashier's check to the client. Price's misappropriation of client funds was due to inattention and neglect rather than knowing conversion.

In a second matter, Price entered into a settlement agreement on behalf of a client, and the client tendered funds to Price to pay the agreed-upon sum pursuant to the agreement by wiring the funds to Price's trust account. Price wrote a check the same day to opposing counsel. When the check was presented for payment five days later, it was returned due to insufficient funds. Price did not maintain all of the client's funds in the trust account due to an accounting error.

In a third matter, Price represented a client in an employment dispute. The parties entered into a settlement agreement, and Price failed to timely deliver the settlement documents to opposing counsel. Price's conduct constituted neglect of the client's matter. Thereafter, during the period of time he was immediately suspended, when a problem arose with the settlement, Price attempted to resolve the problem on behalf of his client, and admitted that his conduct constituted the practice of law while under suspension.

In a fourth matter, Price represented a client concerning an employment dispute, sent a letter on behalf of the client to the employer with an offer to settle the matter, and when no agreement was reached, Price advised the client to commence a lawsuit. The client provided funds to Price to be used for costs incurred in the action and Price agreed to file a complaint. For an eight-month period thereafter, the client attempted to reach Price and was unable to do so. During that time frame, Price did not file a complaint. Following the client's filing a request for investigation with the then Office of Disciplinary Counsel,[2] Price provided the client with a draft copy of the complaint, which was subsequently filed. Price's conduct amounted to neglect of the client's matter.

In a fifth matter, Price entered his appearance on behalf of a client in an employment dispute. Price failed to provide opposing counsel with discovery and failed to respond to a summary judgment motion or advise the client that the motion had been filed. The motion was granted. Price attempted to move for reconsideration of the ruling, but did so, in part, while under suspension, and on these grounds the court denied Price's motion. Price's conduct constituted neglect, engaging in conduct prejudicial to the administration of justice and conduct adversely reflecting on fitness to practice law.

In addition to the misconduct involving client matters, from January 1994 through August 1994, Price wrote thirty checks on his business account that were returned for insufficient funds, and twenty-five checks that were paid by the bank even though there were insufficient funds on deposit to cover the checks. During the same time frame, nine checks written on Price's trust account were returned for insufficient funds.

In February 1998, Price petitioned for reinstatement. By Order dated January 16, 2001, Price was denied reinstatement because he had failed to file an affidavit con-

---

1. Price was immediately suspended from the practice of law on January 12, 1995 due to the allegations set forth in this matter. The immediate suspension was subsequently vacated on February 7, 1995, pending final disposition of the disciplinary proceeding.

2. Effective January 1, 1999, Disciplinary Counsel was designated as the Office of Attorney Regulation Counsel. See C.R.C.P. 251.3.

taining a list of all pending matters, failed to notify all of his clients and opposing counsel that he had been suspended, and failed to file a list of pending matters with the court after being suspended. Additionally, with regard to several clients, Price took action on their behalf when he was suspended. *See generally In the Matter of George Case Price,* 18 P.3d 185 (Colo.2001).

The misconduct giving rise to the disciplinary proceeding occurred within the time frame 1991 through 1998.[3] Throughout those seven years, Price was distracted by marital difficulties and became increasingly depressed, manifesting a short attention span, an inability to concentrate and a failure to focus on the details of any given matter. Throughout that period, however, he remained close to his two sons. Price sought marital counseling in 1997, but it did not resolve the marital difficulties. In 1997, at the zenith of the depression, in an attempt to stop the downward spiral of his personal and professional life, Price sought individual therapy with Dr. Selinger, a behavioral psychologist, who continued to treat Price through March, 2002, and intermittently thereafter. A divorce was later finalized on May 28, 2002.

Throughout this time period, Dr. Selinger treated Price for dysthymic disorder involving moderate depression. Based on his assessment of Price over a five-year period, Dr. Selinger opined that the primary cause of Price's depression has been resolved, and that he no longer manifests the behavior which gave rise to the prior disciplinary action. Currently, Price shows no sign of depression, and enjoys a positive outlook on his life.

In 1999, Price sought and obtained employment with the Federal Emergency Management Administration ("F.E.M.A."), where he is presently part of the Project Impact/Corporate Team dealing directly with the victims of disasters. The team is responsible for contacting roughly three hundred businesses seeking private sector and government cooperation in preventing disasters. Price's performance in his current position reflects that he is efficient, capable, and has good communication skills. He meets deadlines and brings projects to completion. During the time period he has been employed at F.E.M.A., he has never neglected a project or a client.

From 1999 to the present, Price has also been employed as a paralegal by Sandra Jaquith, who has known Price since law school. Under Jaquith's supervision, Price conducts research, interviews clients, and assists in negotiation and arbitration of cases. As a paralegal, Price has worked on approximately thirteen cases, is attentive to detail, and is responsible. He follows through on assignments, calendars matters and is proactive with his tasks. Throughout his period of suspension, both through his work as a paralegal and through his fulfillment of Continuing Legal Education courses, Price has remained current in the law.[4]

Notwithstanding his suspension from the practice of law, Price remained active in community affairs. He has performed volunteer work in the Denver community with the Park Hill Community Justice Council, and is also a member of the Community Accountability Board. Price takes full responsibility for his misconduct. He is committed to getting back into the practice of law of law. He intends to continue in therapy and submit his law practice to financial monitoring.

Price filed the within Petition for Reinstatement on January 14, 2002. At the time he filed the Petition, he had been suspended for approximately five years. The People stipulated that the Petition was filed within the five-year time frame set forth in C.R.C.P. 251.29(b).[5] Under that rule, the five-year

---

**3.** During the same time frame, Price received three letters of admonition dated June 11, 1991, July 28, 1993, and August 22, 1994. These letters concerned Price's neglect of a client matter, failure to communicate with clients, and on one occasion, failing to reduce a contingent fee agreement to writing.

**4.** Price completed 16 Continuing Legal Education courses and read twenty-four other treatises, journals or law related reading material.

**5.** C.R.C.P. 251.29(b) provides in relevant part: [a]n attorney who has been suspended for a period longer than one year must file a petition with the Presiding Disciplinary Judge for reinstatement.... [I]f the attorney remains suspend-

time frame would be tolled during the period of time a Petition for Reinstatement was pending. Price's prior Petition for Reinstatement was pending for approximately a three year period. The People further stipulated that Price substantially complied with all prior orders. The People stipulated to Price's reinstatement.

## II. CONCLUSIONS OF LAW

■ C.R.C.P. 251.29(b) provides in relevant part:

An attorney who has been suspended for a period longer than one year must file a petition with the Presiding Disciplinary Judge for reinstatement and must prove by clear and convincing evidence that the attorney has been rehabilitated, has complied with all applicable disciplinary orders and with all provisions of this chapter, and is fit to practice law.

■ Thus, an attorney who desires reinstatement after suspension must bear the burden of proving that he or she is (1) rehabilitated; (2) has complied with all applicable disciplinary orders and all provisions of the Colorado Rules of Civil Procedure relating to attorney discipline regarding actions required of suspended attorneys, and (3) is fit to practice law. All three of the elements of proof must be established before reinstatement may be authorized. *See Goff v. People,* 35 P.3d 487 (Colo. PDJ 2000).

Additionally, certain criteria must be considered in reinstatement proceedings in order to evaluate an attorney's rehabilitation. *People v. Klein,* 756 P.2d 1013 (Colo.1988), interprets the language of the prior reinstatement rule, C.R.C.P. 241.22, and sets forth criteria which must be considered in reinstatement proceedings in order to evaluate an attorney's rehabilitation. *Klein* requires:

Any determination of that issue [rehabilitation] must include consideration of numerous factors bearing on the petitioner's state of mind and professional ability, including character, conduct since the imposition of the original discipline, professional competence, candor and sincerity, present business pursuits, personal and community service, and the petitioner's recognition of the seriousness of his previous misconduct.

Price has established by a clear and convincing standard that he is rehabilitated. Price determined that the main cause of his spiral into depression and the consequential professional misconduct over a seven year period was his response to a difficult marriage. After seeking marital counseling and determining that the counseling was not benefiting the situation, Price obtained a divorce. He also sought treatment for his depression. Medical evidence confirms that Price has rectified the behavior and circumstances which resulted in his suspension.

Prior to his suspension, Price was a capable attorney whose judgment and ability to function became impaired due to depression. He has demonstrated that he is reliable and capable in his present employment with F.E.M.A. and as a paralegal. Through his paralegal position and his fulfilling Continuing Legal Education requirements, as well as the independent reading of legal journals, Price has established that he is currently fit to practice law.

The parties stipulated that Price has substantially complied with all prior disciplinary orders and all provisions of the Colorado Rules of Civil Procedure relating to attorney discipline. The parties further stipulated that Price's Petition for Reinstatement was filed within the five-year deadline required by C.R.C.P. 251.29(b). The facts acknowledged by these stipulations are accepted.

Price fully acknowledged and expressed remorse for his prior conduct. He recognized that the conduct was entirely his responsibility and took affirmative action to

ed for five years or longer, reinstatement shall be conditioned upon certification by the state board of law examiners of the attorney's successful completion, after the expiration of the period of suspension, of the examination for admission to practice law and upon a showing by the attorney of such other proof of professional competence

as the Supreme Court or a Hearing Board may require; provided, however, that filing a petition for reinstatement within five years of the effective date of the suspension of the attorney tolls the five-year period until such time as the Hearing Board rules on the petition.

resolve the difficulties in his life underlying the misconduct.

The evidence admitted in this reinstatement hearing established by clear and convincing evidence that Price is rehabilitated, has complied with all applicable disciplinary orders, and is fit to practice law as required by C.R.C.P. 251.29.

The Supreme Court in *People v. Price*, 929 P.2d at 1321, ordered that "[u]pon any reinstatement, the respondent is ordered to comply with the conditions included in the conditional admission." Accordingly, Price's reinstatement is conditioned upon his adherence to the following conditions:

1. MONITORING OF PRACTICE BY ANOTHER ATTORNEY:

An attorney approved by the Office of Attorney Regulation Counsel shall review the respondent's legal files and method of handling the respondent's case load for a period of three years following the respondent's reinstatement to the practice of law. The review procedure shall be as follows:

A. The respondent shall demonstrate the existence of a workable reminder, or "tickler" system, and proof of a dual calendar system, or comparable case monitoring system, in the respondent's office to the Office of Attorney Regulation Counsel within ninety (90) days of any Order of Reinstatement and shall, by the reports of the monitoring attorney, demonstrate that both the reminder system and the dual calendar system, or comparable case-monitoring system, is in existence and operating effectively.

B. A case-load-review meeting shall take place between the monitoring attorney and the respondent on this schedule:

(1) First year: meeting once per month;

(2) Second year: meeting every other month;

(3) Third year: meeting quarterly.

C. At each meeting the following will take place:

(1) The respondent will prepare a list of current, active files, which files will be reviewed by the monitoring attorney together with the respondent. The monitoring attorney will take steps to verify that the list is complete.

(2) The monitoring attorney will make, and the respondent will write down, specific suggestions necessary to assure that the case load is being properly and professionally handled and that the respondent is progressing in a satisfactory manner following the respondent's reinstatement.

(3) The monitoring attorney and the respondent will review the list of suggestions from the previous meeting to be sure that all suggestions for improvement have been implemented and that the respondent has complied with them.

(4) The monitoring attorney shall have access to and monitor, to the extent he deems necessary, all financial accounts of the respondent, including personal accounts, in order to assure that no commingling of funds occurs.

D. Within ten days following each meeting, the respondent shall submit to the Office of Attorney Regulation Counsel a written report of the meeting, which report shall be signed by the monitoring attorney.

E. The monitoring attorney shall immediately disclose to the Office of Attorney Regulation Counsel, 600 17th Street, Suite 200–South, Denver, Colorado 80202, any matters which are uncorrected or which represent significant problems requiring corrective attention. Copies of such correspondence shall be sent to the respondent.

2. *FINANCIAL MONITORING:*

A. The respondent will maintain the following minimum records as to all bank accounts instituted or utilized by the respondent in any fashion whatsoever in the practice of law:

(1) A separate bank account or accounts and, if utilized, a separate savings and loan association account or accounts, located in Colorado, in the name of the lawyer or law

firm and clearly labeled and designated as "trust account."

(2) Original or duplicate deposit slips and, in the case of currency or coin, an additional cash receipts book, clearly identifying:

    (a) The date and source of all trust funds received;

    (b) The client or matter for which the funds were received.

(3) Original cancelled checks, all of which must be numbered consecutively.

(4) Other documentary support for all disbursements and transfers from the trust account.

(5) A separate cash receipts and disbursements journal, including columns for receipts, disbursements, transfers, and the account balance, and containing at least:

    (a) The identification of the client or matter for which the funds were received, disbursed, or transferred;

    (b) The date on which all trust funds were received, disbursed, or transferred;

    (c) The check number for all disbursements;

    (d) The reason for which all trust funds were received, disbursed, or transferred.

(6) A separate file or ledger with an individual card or page for each client or matter showing all individual receipts, disbursements, or transfers and any unexpended balance and containing:

    (a) The identification of the client or the matter for which trust funds were received, disbursed, or transferred;

    (b) The date on which all trust funds were received, disbursed, or transferred;

    (c) The check number for all disbursements;

    (d) The reason for which all trust funds were received, disbursed, or transferred.

(7) All bank or savings and loan association statements for all trust accounts.

B. The respondent will perform the following trust-accounting procedures:

1. The lawyer shall cause to be made monthly:

    (a) Reconciliation of all trust bank or savings and loan association accounts, disclosing the balance per bank, deposits in transit, outstanding checks identified by date and check number, and other items necessary to reconcile the balance per bank with the balance per the checkbook and the case receipts and disbursements journal;

    (b) A comparison between the total of the reconciled balances of all trust accounts and the total of the trust ledger cards or pages, together with specific descriptions of any differences between the two totals and reasons therefor.

2. At least annually, a detailed listing identifying the balance of the unexpended trust money held for each client or matter.

3. The above reconciliation's, comparisons, and listing shall be retained for at least six years.

C. The respondent shall direct any bank or savings and loan association where the respondent is a signatory on any bank account utilized in the practice of law to notify the Office of Attorney Regulation Counsel in the event any law firm or trust account check is returned due to insufficient funds or uncollected funds, absent bank error. Further, if any such check is returned, the respondent shall, likewise, notify the Office of Attorney Regulation Counsel.

D. The respondent shall file a written report with the Office of Attorney Regulation Counsel each year for a period of five years beginning one year from the date of the reinstatement order regarding the satisfactory maintenance of the financial aspect of the respondent's law practice and demonstrating the respondent's compliance with the conditions set forth above. The said report shall contain the certificate of a certified public accountant verifying that the procedures set forth above were followed and that

an audit demonstrated no irregularities in the handling of the trust accounts. Said audit and report shall be conducted and complied with at the respondent's sole expense.

E.  The respondent shall obtain malpractice insurance coverage of no less than $100,000.00 for each claim and, within thirty days of the order of reinstatement, shall deliver to the Office of Attorney Regulation Counsel documentary proof of the existence of such coverage; further, the annual written report filed with the Office of Attorney Regulation Counsel referred to hereinabove shall specifically include documentary proof of the continued existence of malpractice insurance coverage during the entire period of monitoring by the Office of Attorney Regulation Counsel described herein.

F.  The respondent shall specifically maintain separate accounts for any funds coming into the respondent's possession as real estate broker and shall not utilize the respondent's law firm business account nor trust accounts for any broker functions whatsoever.

3.  In the event that Price returns to the practice of law in some capacity such as in-house counsel to a company, or as an associate or member of a firm with built-in possibilities for monitoring, then the conditions specified above may modified accordingly to obtain the same goals therein which contemplate that Price will return to a solo practice.[6]

### III.  ORDER OF REINSTATEMENT

It is therefore ORDERED:

George C. Price, attorney registration number 10652 is reinstated to the practice of law effective thirty-one days from the date of this order, subject to the conditions set forth above. Price shall pay all costs of the reinstatement proceeding. Respondent shall file a Statement of Costs or Notice that costs have been paid within fifteen (15) days of the date of this Order. Petitioner shall have five (5) days thereafter to file a Response.

6.  Any modifications of the conditions set forth herein shall be submitted to the PDJ for review.